**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Jeff Sklarin,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 26 C 549** |
| **v.** | ) | |
| | ) | **Judge Jorge L. Alonso** |
| **Google LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

Defendant's motion to dismiss the amended complaint [23] is denied. Defendant's motion to dismiss the original complaint [15] is denied as moot.

## STATEMENT

In this employment discrimination case, Plaintiff, Jeff Sklarin, alleges that he was constructively discharged, despite satisfactory work performance, due to his supervisor's harassment and ongoing disparate treatment. He asserts claims of discrimination and retaliation based on his disability (anxiety and depression) and his race and religion (Jewish), under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, *see id.* §§ 12112, 12203; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*; the Civil Rights Act of 1866, *see* 42 U.S.C. § 1981; and the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101, *et seq*. Defendant moves to dismiss the claims asserted under § 1981. For the following reasons, Defendant's motion to dismiss is denied.

### I. Factual Background

Plaintiff alleges that he is Jewish and suffers from anxiety and depression, a protected disability. He began working for Defendant, Google LLC ("Google"), in Chicago in 2016. For seven years, he received consistently excellent performance reviews and substantial bonuses. He

began as an Agency Account Strategist, and he was eventually promoted to the role of Senior Account Executive.

In April 2023, Plaintiff began reporting to a new manager, Syed Rabbi, who is Muslim and is not disabled. During a July 2023 meeting on empathy in the workplace, Rabbi told team members that they could be open with him about mental health issues they might be experiencing, and he promised he would support them. At the time, Plaintiff's wife and grandparents were suffering from serious health problems, which were exacerbating his anxiety and depression. On August 9, 2023, Plaintiff met with Rabbi to inform him that he was struggling with these issues, though they had not yet impacted his work performance, as evidenced by his performance reviews. Around the same time, Rabbi learned that Plaintiff is Jewish.

Rabbi then "began a campaign of fierce hostility" toward Plaintiff, "relentlessly belittling [him] and harassing [him] about his work." (Am. Compl. ¶ 19, Dkt. No. 22.) For example, he began to "taunt" Plaintiff and "make comments about [his] mental capacity for the job." (*Id.* ¶ 20.) He told Plaintiff in a "formal feedback document" on September 21, 2023, that he was "going to be very mentally tough on" him. (*Id.*) A way in which Rabbi did this, Plaintiff alleges, was to "attempt to unnerve [Plaintiff] in front of clients." (*Id.* ¶ 21.) For example, during a November 15, 2023 client meeting, "Rabbi fixated his gaze on [Plaintiff] and intently glared at [him] while [he] was interacting with the client." (*Id.*) After this incident, Plaintiff reached out to Rabbi and asked why he had glared at him. Rabbi initially refused to discuss it, but eventually he told Plaintiff that he intended to "test [Plaintiff's] mental fortitude," and it would be "up to [him] to . . . choose [how] to respond." (*Id.* ¶ 22.) When Plaintiff mentioned the impact this approach might have on clients, Rabbi "angrily berated" Plaintiff. (*Id.*)

Due to Rabbi's "continual harassment, belittling, and taunting," Plaintiff took a leave of absence. (*Id.* ¶ 23.) Just before Plaintiff went out on leave, on or around November 20, 2023, Rabbi told him, "When you get back we are going to have to address if you can mentally handle the stress of this role," or something to that effect. (*Id.* ¶ 24.)

On January 25, 2024, Plaintiff met with Rabbi to discuss his return to the office. Rabbi asked about Plaintiff's medications and told him, "Do not rush back until you are mentally ready and be prepared to run through a brick wall." (*Id.* ¶ 26.) Plaintiff understood Rabbi to be suggesting that he was not mentally fit to return to work because of his disability.

Plaintiff's next biannual review was "more negative than he had ever received at Google." (*Id.* ¶ 27.) Rabbi issued the review without speaking to Plaintiff or addressing his self-assessment, which outlined his accomplishments during the relevant period.

Plaintiff had reached 93% of his revenue target, and was on pace to improve to 98%, but nevertheless, Rabbi threatened to place Plaintiff on a performance improvement plan ("PIP"). Plaintiff alleges that his revenue numbers, viewed objectively, did not justify placing him on a PIP, and "there are non-disabled and non-Jewish Senior Account Executives with lower numbers who were not placed on PIPs." (*Id.* ¶ 28.)

According to Plaintiff, Rabbi's feedback following this review was not constructive and did not seem designed to improve Plaintiff's performance. For example, Rabbi criticized Plaintiff for failing to "pitch bigger" to one client, although he was already pitching 100% year-over-year growth. (*Id.* ¶ 29.) When Plaintiff attempted to address Rabbi's concern by increasing his pitch to 400% year-over-year growth, Rabbi told him the pitch "hurt the team." (*Id.*) Then, on April 22, 2024, Rabbi sent Plaintiff an email in which he suggested that Plaintiff "lacked product knowledge of YouTube's audience targeting features" because he had made an incorrect suggestion to a client.

(*Id.* ¶ 30.) Rabbi later acknowledged that Plaintiff's suggestion was actually correct, but he refused to make the same acknowledgement in writing to correct his earlier email. Additionally, Rabbi complained that Plaintiff's calendar showed that he had scheduled too few meetings during a certain time frame. He did not account for the fact that Plaintiff was out on leave for seven days during this time frame, due to jaw surgery and bereavement.

On or around April 29, 2024, Plaintiff met with Kelly Twohig, who supervised Rabbi, to discuss Plaintiff's numbers. Plaintiff told Twohig that he did not feel supported by Rabbi because of Rabbi's "open hostility" toward him. (*Id.* ¶ 33.) Rabbi "lash[ed] out" in response. (*Id.*) Plaintiff then met separately with Twohig, who confirmed that she had observed the combative relationship between Rabbi and Sklarin. She told Plaintiff that, while she recognized that Rabbi would deny any statements Plaintiff attributed to him, she would speak with Rabbi about the situation. According to Plaintiff, she never followed up.

Plaintiff complained to Human Resources ("HR") about Rabbi on May 15, 2024. He was told that this was a "he said/she said" situation, so HR would begin by facilitating a conversation between the parties. (*Id.* ¶ 35.) Plaintiff attempted to explain that a conversation involving both him and Rabbi would only make the situation worse, and it would leave Plaintiff open to retaliation. He declined to proceed and asked HR not to inform Rabbi of Plaintiff's complaint.

On June 14, 2024, Plaintiff sought help from Defendant's Accommodations Team. Plaintiff's physician informed the Accommodations Team that Plaintiff required a change of manager to protect his mental health. There were other employees in Plaintiff's position reporting to different managers, and Plaintiff wanted to move to a different team, where he could perform the same work under a different manager. The Accommodations Team refused, describing the request as one for a "non-standard accommodation." (*Id.* ¶ 37.)

On June 17, 2024, Plaintiff spoke to Employee Relations, which began an investigation lasting approximately six weeks. It was unable to "substantiate any of the claims." (*Id.* ¶ 38.)

Plaintiff believed he had exhausted all options for seeking relief within Google, and still he was "facing an escalating campaign of discrimination, hostile work environment, and retaliation." (*Id.* ¶ 39.) He felt he had "no choice but to leave Google to preserve his career and health." (*Id.*) On August 16, 2024, he was "constructively discharged from Google." (*Id.* ¶ 40.)

Plaintiff's amended complaint contains five counts: Count I, race discrimination under § 1981; Count II, religious discrimination under Title VII; Count III, disability discrimination under the ADA; Count IV, retaliation under all three statutes; and Count V, discrimination and retaliation under the IHRA.

## II. Discussion

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether the complaint states a claim on which relief may be granted. *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). To state a claim, a complaint must "give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555; that is, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court must "construe the complaint in the light most favorable to plaintiff, accept all well-pleaded facts as true, and draw reasonable inferences in plaintiff's favor." *Taha v. Int'l Bhd.*

*of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020). "A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

Defendant moves to dismiss the claims of race discrimination and retaliation asserted under § 1981 in Counts I and IV. Defendant makes two arguments: (1) Plaintiff does not plausibly connect any allegedly discriminatory treatment to his Jewish identity, as opposed to his disability, and (2) § 1981 does not permit Plaintiff to claim simultaneously that Defendant discriminated against him on the basis of race as well as other protected characteristics. Neither argument is convincing.

**A. Plaintiff Plausibly Alleges Race Discrimination**

The Seventh Circuit has described the requisite level of detail for an employment discrimination claim as "minimal." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (citing *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 782 (7th Cir. 2007)). An employment discrimination plaintiff need do little more than "aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of" race or another protected characteristic. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (citing *Tamayo*, 526 F.3d at 1084); *see Freeman v. Metro. Water Reclamation Dist. of Greater Chicago*, 927 F.3d 961, 965 (7th Cir. 2019), *Weingardt v. Proviso Area for Exceptional Child. PAEC 803*, No. 25 CV 12441, 2026 WL 2350668, at *2 (N.D. Ill. Aug. 13, 2026) ("It is enough for a plaintiff [asserting a § 1981 claim] to allege that they were discriminated against because of their race."). And, where the employer's explanation for its treatment of the plaintiff is "factually baseless" or "insufficient to motivate the employer's action," a reasonable factfinder may conclude that the explanation is

"fishy enough to support an inference that the reason must be discriminatory." *Tibbs v. Admin. Office of the Ill. Courts*, 860 F.3d 502, 506 (7th Cir. 2017) (internal quotations marks omitted); *see Carlson*, 758 F.3d at 827.

Plaintiff explains that, as a person of Jewish descent, he is a member of a protected class, and he was constructively discharged following a pattern of intimidation and harassment based on accusations of poor performance that allegedly lacked a factual basis. Assuming the truth of the allegations, as the Court must at this stage, these events are fishy enough to permit Plaintiff's discrimination claims to survive Defendant's motion to dismiss.

True, as Defendant argues, "it is not enough for a complaint to allege labels and conclusions without providing facts—some short, plain, and plausible factual narrative that conveys 'a story that holds together.'" *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404-05 (7th Cir. 2010)). But the Court has taken pains to recount Plaintiff's allegations of disparate treatment in some detail, and these allegations plainly amount to a plausible factual narrative conveying a story that holds together. *See Swanson*, 614 F.3d at 404-05 ("[T]he court will ask itself *could* these things have happened, not *did* they happen."); *see Johnson v. Bd. of Educ. of the City of Chicago*, No. 25 CV 13794, 2026 WL 1536816, at *1 (N.D. Ill. June 1, 2026) (distinguishing *Kaminski* on a similar basis); *Turner v. Resilience Healthcare - W. Suburban Med. Ctr., LLC*, No. 24 C 12171, 2025 WL 1806611, at *2 (N.D. Ill. July 1, 2025) (citing *Carlson*, 758 F.3d at 827, and *Concentra*, 496 F.3d at 782).

Defendant cites *Licea v. Illinois Central Railway Co.*, No. 1:25-CV-08706, 2026 WL 2049497, at *1-2 (N.D. Ill. July 15, 2026), another case recently before this Court, but *Licea* is not analogous. There, the allegations were much sketchier; the plaintiff simply stated a conclusion that she was "racially and sexually harassed." *Id.* at *2. Here, Plaintiff's complaint contains more than

enough factual detail to meet the "minimal pleading standard for simple claims of race . . . discrimination." *Tamayo*, 526 F.3d at 1084; *see Freeman*, 927 F.3d at 965.

**B. Plaintiff's ADA Claim Does Not Foreclose His § 1981 Claim**

Unlike Title VII, which permits plaintiffs to obtain some forms of relief by demonstrating that racial animus was a "motivating factor" in an adverse employment action, 42 U.S.C. §§ 2000e-2(m), 2000e-5(g)(2)(B), § 1981 requires "but-for" causation. *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020) ("To prevail, a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right."). Defendant argues that Plaintiff cannot contend that race was the but-for cause of his disparate treatment, while simultaneously contending that he was also a victim of disability discrimination and religious discrimination.

Defendant's argument finds support in some post-*Comcast* decisions in this district. *See, e.g.*, *Arora v. Nav Consulting Inc.*, No. 21 C 4443, 2022 WL 7426211, at *2 (N.D. Ill. Oct. 13, 2022); *Piccioli v. Plumbers Welfare Fund Loc. 130, U.A.*, No. 19-CV-00586, 2020 WL 6063065, at *6 (N.D. Ill. Oct. 14, 2020). Other decisions have rejected similar arguments, explaining that it is possible to plead race discrimination under § 1981 while simultaneously asserting other theories of discrimination based on other characteristics protected by other statutes. For example, in *McCall v. Laborers Union Local 309*, No. 4:25-CV-04045, 2025 WL 3159105, at *3 (C.D. Ill. Nov. 12, 2025), the court denied a motion to dismiss a § 1981 claim that the plaintiff asserted alongside an age discrimination claim, explaining that a "'single event can have multiple but-for causes.'" *Id.* (quoting *Malin v. Hospira, Inc.*, 762 F.3d 552, 562 n.3 (7th Cir. 2014)); *see Hutchens v. Devasiachen*, No. 1:24-CV-00490, 2025 WL 692091, at *3-4 (N.D. Ill. Mar. 4, 2025) (citing *Walton v. Medtronic USA, Inc.*, No. 22-CV-50, 2023 WL 3144320, at *4 (D. Minn. Apr. 28, 2023)

("This Court concludes that the better rule is that 'but-for' is not synonymous with 'exclusive.'")); *see also Wilson v. AIM Specialty Health*, 176 F.4th 977, 988 (7th Cir. 2026) (explaining that the district court "misstated the law"—although the error was harmless—by asserting that the § 1981 plaintiff was "requir[ed to] show [that] the employment action was 'solely due to her race,'" when she needed to show only that race was "a 'but for' cause of the action").

This Court agrees with *McCall* and like decisions stating that there is nothing in *Comcast* foreclosing the possibility of multiple but-for causes. Rather, in *Comcast*, "the Supreme Court simply held that a but-for causation standard, not Title VII's lesser standard, applies to § 1981 claims." *Peaster v. McDonald's Corp.*, No. 22 CV 7037, 2023 WL 5387573, at *4 (N.D. Ill. Aug. 22, 2023). And, as the Supreme Court acknowledged, this was already the law in the Seventh Circuit. *See Comcast*, 589 U.S. at 331 (citing *Bachman v. St. Monica's Congregation*, 902 F.2d 1259, 1262-63 (7th Cir. 1990)); *see also Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, Inc.*, 991 F.2d 1249, 1257 (7th Cir. 1993) ("Racial prejudice need not be the sole motivating factor but must be more than an insubstantial factor bearing on the decision: *but for the prejudice, the interference would not have occurred*.") (emphasis added). But-for causation has also been the standard for Title VII retaliation claims, by the way, ever since *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 362 (2013), and the Seventh Circuit does not seem to believe that the pleading standard for retaliation claims has somehow changed or risen since the *Nassar* decision issued. *Carlson*, 758 F.3d at 828 n. 1 ("The requirement of but-for causation in retaliation claims does not mean that the protected activity must have been the only cause of the adverse action. Rather, it means that the adverse action would not have happened without the activity.")

In *McCall*, the court also explained that, even if the plaintiff's "claims of race and age discrimination were inconsistent with one another," there is nothing improper about pleading "inconsistent theories" in the alternative. 2025 WL 3159105, at *3; *see Hutchens*, 2025 WL 692091, at *4, *Douglas v. Alfasigma USA, Inc.*, No. 19-CV-2272, 2021 WL 2473790, at *14 (N.D. Ill. June 17, 2021) (citing Fed. R. Civ. P. 8(d)(2)). Again, this Court agrees with *McCall* and like decisions. To hold otherwise would be particularly unfair in this context, where the plaintiff cannot perform any pre-complaint investigation that will reveal with certainty what his supervisors at Google—especially Rabbi—were thinking at the time of the events related in the complaint. *See Phillips v. Baxter*, 768 F. App'x 555, 559 (7th Cir. 2019) (citing *Alexander v. United States*, 721 F.3d 418, 424 (7th Cir. 2013) ("Rule 8 does not demand that a plaintiff prove his case at the outset of the litigation, nor does it demand that a plaintiff come to court ready to plead facts (such as the motivations of [defendants]) that he has no way of knowing prior to discovery."), and Fed. R. Civ. P. 9(b) ("[I]ntent . . . may be alleged generally.")); *Higgins v. Lake Cnty. Cir. Ct. Clerk's Off.*, No. 17-CV-07637, 2019 WL 1429655, at *4 (N.D. Ill. Mar. 30, 2019) ("'[The] pleading rules . . . permit inconsistencies in legal theories,' particularly regarding issues such as an employer's motivations.") (quoting *Tamayo*, 526 F.3d at 1086).

Plaintiff alleges that his work performance and behavior did not justify the heightened scrutiny and adverse action to which he was subjected, and he can hardly "read [Rabbi's] mind and know exactly what his reason[s]" for his actions were. *Keigan v. Tiram*, No. 23 C 1398, 2024 WL 5389551, at *4 (N.D. Ill. Sept. 27, 2024). If "there are several unlawful reasons [Rabbi] might have had" for acting as he did, Plaintiff "can plead them all, so long as '[r]ecovery is still *plausible*' as to any of them." *Id.* (quoting *Tamayo*, 526 F.3d at 1086). Plaintiff alleges that he had an exemplary performance record for seven years, until his new supervisor, Rabbi, learned that he

was Jewish and disabled, at which point Rabbi began to treat Plaintiff differently than he had been treated in the past and differently from other, non-Jewish, non-disabled employees. Although the complaint does seem to suggest that Plaintiff's mental health struggles were the primary source of friction between Plaintiff and Rabbi, it also "leaves open the possibility that, had" Plaintiff been a non-Jewish employee struggling with personal issues, Rabbi "would not have reacted" in the same unsympathetic way. *Tamayo*, 526 F.3d at 1087. Because both claims are plausible and the allegations supporting them do not make the claims "mutually exclusive," it is not improper to plead them in the alternative, as Plaintiff has done. *Id.* at 1086.

The Seventh Circuit has frequently stated—even after *Comcast*—that such similar standards govern both Title VII and § 1981 claims that they can be analyzed together. *See, e.g.*, *Lewis v. Indiana Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022) ("The legal analysis for discrimination claims under Title VII and § 1981 is largely identical."). If this is correct at the summary judgment stage, as in *Lewis*, then it is all the more likely to be correct at the pleading stage, when there is no need to plead evidence. True, the Seventh Circuit has not directly addressed whether *Comcast* had any effect on the factual content necessary to state a claim under § 1981. But, in at least one unpublished post-*Comcast* case, *Shed v. Bredemann*, No. 23-2508, 2024 WL 1637544, at *2 (7th Cir. Apr. 16, 2024), the Seventh Circuit analyzed whether a § 1981 claim had been properly pled without suggesting that anything had changed in recent years. In *Shed*, the Seventh Circuit criticized the district court (although it affirmed on other grounds) for dismissing the plaintiff's complaint as "too 'conclusory,'" explaining that the Seventh Circuit's case law provided "that the plaintiff in a discrimination suit need not allege specific facts beyond the type of discrimination that he thinks occurred, by whom, and when." *Id.* (citing *Swanson*, 614 F.3d at 405, and *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)); *see Phillips*, 768 F. App'x at

559, *Petrovic v. Enter. Leasing Co. of Chicago, LLC*, 513 F. App'x 609, 610-11 (7th Cir. 2013); *see also Circle City Broad. I, LLC v. DISH Network, LLC*, No. 1:20-CV-00750, 2021 WL 1225919, at *3-6 (S.D. Ind. Mar. 31, 2021) (relying, as in *Shed*, on *Swanson* and *Swierkiewicz* in concluding that the plaintiff stated a claim under § 1981, *Comcast* notwithstanding). One district court, in a post-*Comcast* decision, called the difference in causation standards imposed by Title VII and § 1981 "immaterial at the pleading stage." *Williams v. Get Fresh Produce, Inc.*, No. 1:26-CV-00601, 2026 WL 1136265, at *3 (S.D. Ind. Apr. 24, 2026). There may be some cases where the difference matters, but this is not one of them. Plaintiff states a claim of race discrimination and retaliation under § 1981, *Comcast* and the presence of other theories of discrimination notwithstanding.

**SO ORDERED.**

**ENTERED: November 3, 2026**



**HON. JORGE ALONSO**
**United States District Judge**